UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAMONE T. BLUE,              )
                             )
        Plaintiff,           )
                             )   CASE NO. C07-654-JCC-JPD
    v.                       )
                             )
DON PATTERSON, *et al.*,     )   REPORT AND RECOMMENDATION
                             )
        Defendants.          )
_____)

## INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Lamone T. Blue is a state prisoner who is incarcerated in the Special Offenders Unit ("SOU") at the Monroe Correctional Complex. He filed the instant civil rights action in April 2007 against various SOU staff members. There are only two defendants now remaining in this action: Corrections Officer Wray and Corrections Officer Funk.[1] Plaintiff asserts in his second amended complaint that officers Wray and Funk retaliated against him after he wrote a grievance complaining that Officer Wray had sexually harassed him.

---

[1] In his second amended complaint, filed on October 9, 2007, plaintiff alleged violations of his constitutional rights by thirty SOU employees. Plaintiff's second amended complaint was dismissed as to twenty-eight of the proposed defendants prior to service. (*See* Dkt. No. 30.) Plaintiff's second amended complaint was served only on defendants Wray and Funk. (*Id.*)

REPORT AND RECOMMENDATION
PAGE - 1

1    Officers Wray and Funk now move for summary judgment. Plaintiff, despite having been
2 advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir.
3 1998), has filed no response to defendants' motion. The Court, having reviewed defendants' motion
4 for summary judgment, and the balance of the record, concludes that defendants' motion should be
5 granted and that plaintiff's second amended complaint and this action should be dismissed with
6 prejudice.

## FACTUAL BACKGROUND

8    Plaintiff asserts in his second amended complaint that at 2:50 p.m. on August 21, 2007, he
9 "wrote-up" Officer Wray for sexual harassment. (Dkt. No. 23 at 15.) He further asserts that at
10 approximately 5:00 p.m. on the same date, Officer Wray and Officer Funk came to his cell, threw
11 food on the floor, and walked away. (*Id*. at 15-16.) Finally, plaintiff asserts that at approximately
12 8:00 p.m. that same evening, officers Wray and Funk came back to his cell and advised him that he
13 was being infracted for assault. (*Id*. at 16.) Plaintiff was subsequently found guilty of assault which
14 resulted in him being placed in disciplinary segregation, prescribed pills, and denied participation in
15 prison programs. (*Id*. at 17.) Plaintiff denies any misconduct and contends that the assault infraction
16 was written in retaliation for the sexual harassment grievance he filed against Officer Wray. (*Id*. at
17 15-17.)

18    Defendants' version of events differs from that of plaintiff. According to officers Wray and
19 Funk, on August 21, 2007, they were delivering dinner to the offenders in the maximum security unit
20 of the SOU where plaintiff was then housed. (Dkt. No. 61, Ex. 2 at 2 and Ex. 3 at 1.) When they
21 arrived at plaintiff's cell, Officer Wray opened the cuff port in the cell door and placed plaintiff's
22 dinner tray through it. (*Id*.) Plaintiff said to Officer Wray "what the fuck are you looking at" and
23 then shoved the tray back through the cuff port. (*See id*.) The tray struck defendant Wray in the
24 hand and the food fell to the tier floor. (*See id*.) According to officers Wray and Funk, plaintiff's

REPORT AND RECOMMENDATION
PAGE - 2

conduct was considered an assault on staff and Officer Wray was therefore required by Department of Corrections ("DOC") policy to write an infraction against plaintiff for this misconduct. (Dkt. No. 61, Ex. 2 at 2 and Ex. 3 at 2.)

Officer Wray states that at the time of the incident on August 21, 2007, he was unaware that plaintiff had filed a grievance again him. (*Id*., Ex. 2 at 2.) Officer Wray further states that he infracted plaintiff because DOC policy required that he do so, not because plaintiff had filed a grievance against him. (*Id*.)

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on summary judgment, the court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

### Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he

REPORT AND RECOMMENDATION
PAGE - 3

suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

<u>Retaliation</u>

In order to state a claim based upon retaliation, a prisoner must allege that (1) the type of activity he was engaged in was protected; (2) prison officials impermissibly infringed on his right to engage in the protected activity, *i.e.*, they acted in a retaliatory manner; and, (3) prison officials' retaliatory action served no legitimate penological interest. *See Rizzo v. Dawson,* 778 F.2d 527, 531-32 (9th Cir. 1985). The Ninth Circuit has cautioned that retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner,* 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (quoting *Sandin,* 515 U.S. at 482). "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped." *Bruce v. Ylst,* 351 F.3d 1283, 1290 (9th Cir. 2003). Plaintiff bears the burden of proving the absence of legitimate correctional goals for the conduct of which he complains. *Pratt,* 65 F.3d at 806.

REPORT AND RECOMMENDATION
PAGE - 4

Defendants argue that plaintiff fails to assert a cognizable retaliation claim. Defendants concede that filing a grievance is a constitutionally protected activity. They deny, however, that they impermissibly infringed on plaintiff's right to engage in protected activity. Defendants have presented evidence in the form of declarations from both Officer Wray and Officer Funk which establishes that the infraction written against plaintiff on August 21, 2007, was written because plaintiff did, in fact, assault Officer Wray on that date by shoving his food tray back through the cuff port and striking Officer Wray on the hand. Issuing an infraction for a violation of institutional rules is a means of preserving internal order and discipline, which are well recognized legitimate penological goals. *See Barnett*, 31 F.3d at 816 (citing *Rizzo*, 778 F.2d at 532). Plaintiff has offered no evidence whatsoever that defendants acted in a retaliatory manner. Moreover, the evidence that is before the Court clearly establishes that defendants' actions advanced legitimate penological goals. This Court concludes that defendants are therefore entitled to judgment as a matter of law on plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, this Court recommends that defendants' summary judgment motion be granted and that plaintiff's second amended complaint, and this action, be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 21st day of November, 2008.

/s/ James P. Donohue

JAMES P. DONOHUE
United States Magistrate Judge